## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY PETROZZINO and CHRISTINE PETROZZINO, h/w, individually and on behalf of all others similarly situated | Civil Action No.: |
| Plaintiffs | |
| v. | CLASS ACTION COMPLAINT |
| VIVINT, INC. | Jury Trial Demanded |
| Defendant | |

Plaintiffs Jeffrey Petrozzino and Christine Petrozzino, h/w, individually and on behalf of all others similarly situated, hereby complain and allege on information and belief as follows:

### INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of New Jersey residents ("consumers") who purchased home security systems from Defendant Vivint, Inc. ("Defendant", "Vivint").

2.      As is set forth in more detail below, Plaintiffs were solicited at their home by Defendant's door-to-door sales representative for the purpose of inducing Plaintiffs to purchase a home security system.

3.      Based upon Defendant's representations that Defendant's home security system was of good quality, functional, and appropriate for Plaintiffs' use, and that Defendant would pay off the remaining balance due on Plaintiffs' existing security system, Plaintiffs purchased Defendant's system.

4.      Following the sale, Defendant emailed Plaintiff Christine Petrozzino a copy of a

two-page System "Purchase and Services Agreement", however, as is set forth in more detail below, it was much later discovered that the agreement which was sent to Mrs. Petrozzino was not complete and did not include the page of the agreement which set forth important terms including but not limited to terms related to installation, repair, monitoring, and arbitration.

5. On information and belief, other consumers who purchased Vivint home security systems from door-to-door sales representatives received no contract at all.[1]

6. From the outset, Defendant's security system failed to perform as promised by Defendant and experienced frequent and prolonged lapses in recording video from the security cameras.

7. Despite Plaintiff(s) spending numerous hours in contact with Defendant's support department attempting to resolve the issues with Defendant's system, and spending money to purchase additional hardware at Defendant's recommendation, the system has never worked as promised by Defendant.

8. Defendant's security system will record video from some cameras only intermittently and for one camera will not record at all.

9. Despite repeated calls and/or text chats to Defendant for customer support, Defendant has failed to fix the system; has refused to refund Plaintiffs' money; and continues to debit Plaintiff's account on a monthly basis for a product which does not work properly.

10. Plaintiffs also received a personal check from Defendant's sales representative which was intended to cover the pay-off of Plaintiffs' existing home security system contract, however, the check was not a full reimbursement of the remaining balance due on Plaintiffs'

---

[1] Plaintiffs' counsel has heretofore represented such consumers.

contract.

11.     On information and belief, the problems which Plaintiffs have experienced with Defendant's security system are not unique to Plaintiffs but rather are just one example of consumers who have been sold an inferior product which fails to perform as promised, yet Defendant continues to charge existing customers on a monthly basis and continues to sell the product to new customers, knowing the system does not work properly for most customers and is unlikely to work properly for new customers.

12.     On information and belief, Defendant has sold and continues to sell defective home security systems to consumers by its door-to-door sales representatives, such as the one sold to Plaintiffs, while providing consumers with incomplete contracts which omit terms and material information which would be important to consumers, or providing no contract at all.

13.     On information and belief, Defendant's door-to-door sales representatives have sold and continue to sell home security systems to consumers by promising that Defendant will reimburse consumers the remaining amounts due on their existing home security contracts, while failing to do so in whole or in part.

14.     As a result of Defendant's deceptive and misleading sales practices, consumers are charged on a monthly basis by Defendant for security systems which do not work adequately to protect consumers' families and homes and fail to provide the safety and security that Defendant has promised consumers would be provided by the product.

15.     As a result of Defendant Vivint's actions, Plaintiffs and the Class have suffered injury in fact and have been harmed by Defendant's conduct, while Defendant has collected millions of dollars in charges and monthly fees from consumers.

16.     Accordingly, Plaintiffs bring this action seeking recovery for Defendant's violation of the New Jersey Consumer Fraud Act, breach of contract, breach of express warranty, breach of implied warranty, fraudulent misrepresentation, common law fraud, and breach of the covenant of good faith and fair dealing.


## PARTIES

17.     Plaintiffs are Jeffrey Petrozzino and Christine Petrozzino, h/w, who are adult individuals and residents of Blackwood, New Jersey.

18.     Defendant is Vivint, Inc., is Utah corporation principally doing business in Utah, with a principal place of business in Provo, UT.


## JURISDICTION & VENUE

19.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d) because the aggregated claims of the individual class members exceed the sum or value of $75,000, exclusive of interest and costs; the exact number of putative class members, defined below, is unknown but is reasonably expected to exceed one hundred (100); and most if not all of the proposed class members are residents of New Jersey which is a state which is different from the state which Defendant is a corporate citizen (Utah).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because the class lead plaintiffs reside in this district and a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

4

21.     This Court has personal jurisdiction over Defendant because Vivint has conducted substantial business in this judicial district and intentionally and purposefully sold its products to residents of this District of New Jersey.

## FACTUAL ALLEGATIONS

22.     On or about August 25, 2017, Defendant's door-to-door sales representative visited Plaintiffs' residence in Blackwood, New Jersey, soliciting Plaintiffs to purchase a home security system.

23.     Based upon Defendant's representations that Defendant's home security system was of good quality, functional, and appropriate for Plaintiffs' use, and that Vivint would pay off the remaining balance due on Plaintiffs' existing home security system, Plaintiffs purchased the system.

24.     On or about August 27, 2017, Defendant's technician installed the system.

25.     The security system consists of wireless video cameras and a "control panel", along with a hard disc to record video.

26.     Defendant represented the security system as one which would continuously record the video received from the cameras.

27.     On or about August 26, 2017, Defendant emailed Plaintiff Christine Petrozzino a copy of a two-page System "Purchase and Services Agreement", however, as is set forth in more detail below, it was much later discovered that the agreement which was sent to Mrs. Petrozzino was not complete.

28.     Plaintiffs have become aware, through their counsel who has represented other

purchasers of Defendant's home security system, that other Vivint customers received no contract at all.

29.     From the outset, Defendant's security system failed to perform as promised by Defendant.

30.     The system experienced frequent and prolonged lapses in recording the video from the cameras.

31.     Plaintiffs spent numerous hours in contact with Defendant's support department attempting to resolve the issues with Defendant's system.

32.     On or about October 14, 2018, Defendant's support representative attributed the problems with the system as being due to low network signal strength.

33.     Defendant's support representative also acknowledged that one of the video cameras which was currently offline had a history of numerous offline event notifications.

34.     Defendant's support representative recommended the installation of wi-fi signal repeaters and scheduled a technician to install the repeaters in Plaintiffs' home.

35.     On or about October 18, 2018, Defendant's technician visited Plaintiffs' home and advised that the repeaters would not solve the problems with the security system and would only cause other problems.

36.     Defendant's technician did not install the repeaters and left without fixing the problems with the system.

37.     On or about October 31, 2018, Defendant's support representative advised Mr. Petrozzino that thirty (30) feet was the maximum distance that a camera could be from the support panel to ensure consistent communications between the camera and the control panel.

6

38.     Mr. Petrozzino measured the distance between the cameras and the control panel and discovered that two (2) of the cameras had been installed by Defendant's technician beyond the thirty (30) feet maximum distance to the control panel.

39.     On or about November 19, 2018, Defendant's representative informed Plaintiffs that at the time of the system installation the technician tests the network signal strength to make sure that the network will support the cameras, but after the installation any issues with the network signal strength are the customer's problem.

40.     At the inducement of Defendant's representative, Plaintiffs upgraded their modem / router at their own significant expense.

41.     The upgraded hardware purchased by Plaintiffs did nothing to solve the problems with Defendant's system.

42.     To date, the system has never performed properly with the cameras only working intermittently and one camera not working at all.

43.     On or about April 3, 2019, Defendant emailed Jeffrey Petrozzino a copy of the Purchase and Services Agreement.

44.     Defendant emailed the Agreement at the request of Jeffrey Petrozzino, after Mr. Petrozzino chatted with Defendant's representative.

45.     On or about November 4, 2019, Jeffrey Petrozzino discovered that on August 27, 2017, the day after Defendant emailed Christine Petrozzino the Agreement, Defendant emailed Mrs. Petrozzino an "Order Confirmation" which, unknown to Plaintiffs at the time, actually included a different version of the Agreement consisting of three (3) pages.

46.     Defendant's email of August 27, 2017, made no mention of the fact that "Order

7

Confirmation" email had attached a different version of the Agreement from the version sent the day before.

47.     Plaintiffs had no reason to suspect that the "Order Confirmation" as characterized by Defendant, was actually a contract with terms which varied from the original contract sent the prior day.

## CLASS ALLEGATIONS

48.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2), and/or 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

49.     Plaintiffs seek to represent the following "Class":

All persons who purchased a Vivint Home Security System in New Jersey.

50.     Numerosity: Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members remains unknown at this time, upon information and belief, there are hundreds of putative Class members throughout New Jersey who are generally ascertainable by appropriate discovery.

51.     Commonality: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

a.     Whether Vivint engaged in the conduct alleged herein;

b.     Whether Vivint breached any warranties through its conduct as alleged

8

herein;

c.    Whether Vivint engaged in unfair, deceptive and/or unlawful practices that

violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et. seq.,

through its conduct as alleged herein;

d.    Whether Plaintiffs and other Class members are entitled to restitution for

Vivint's breach of warranties;

e.    Whether Plaintiffs and other Class members are entitled to damages for

Vivint's violation of the New Jersey Consumer Fraud Act.

52.    Typicality: Plaintiffs' claims are typical of those of the other Class members because all members of the Class were damaged through the common misconduct described above and were subject to Vivint's breach of warranties and violation of the New Jersey Consumer Fraud Act.  Plaintiffs are advancing the same claims and legal theories on behalf of all members of the Class.

53.    Adequacy of Representation: Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of the Class members. Plaintiffs have retained counsel experienced in complex class action litigation and experienced in representing other plaintiffs in litigation against Vivint.  Plaintiffs intend to prosecute this action vigorously.

54.    Superiority: Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available

methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class members, who could not individually afford to litigate a complex claim against large corporate defendants.  Further, even for those Class members who could afford to litigate such a claim, it would still be economically impractical.

55.     The nature of this action make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because Vivint would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be duplicative.

56.      This class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

57.     Individual litigation of the claims of the Class members is economically

10

unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely substantial, the individual damages incurred by each Member resulting from Vivint's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual Class members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. A class action in this matter will avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

58.     Notice of a certified class action and of any result or resolution of the litigation can be provided to Class members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

59.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

60.     Plaintiffs reserve the right to modify or amend the definition of the proposed class and subclasses before the Court determines whether certification is appropriate and as the parties engage in discovery.

## FIRST CAUSE OF ACTION

### (Violation of New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("CFA")

61.     Plaintiffs incorporate by reference each and every allegation above, inclusive of all paragraphs, as if set forth herein in their entirety.

62.     The New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-2, makes it unlawful for companies like Defendant Vivint to employ "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, . . . in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived, or damaged thereby . . . ."

63.     A person who suffers "any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under" the CFA "may bring an action . . . therefor in any court of competent jurisdiction" for "legal or equitable relief," including treble damages "sustained by any person in interest," pursuant to N.J.S.A. 56:8-19.

64.     Defendant Vivint violated the CFA by:

    a.    providing consumers with a sales contract which was incomplete and omitted material terms related to the rights and obligations of the parties, including an arbitration provision, or providing no contract at all;

    b.    misleading consumers by sending them a second version of a sales contract under the guise of an "order confirmation" while failing to disclose that a contract which materially differed from the original

contract was actually being sent;

c.     installing security cameras in consumers' homes knowing that, due to the distance the cameras were located from the control panel, that the cameras were unlikely to work reliably, if at all;

d.     misleading consumers so as to induce them to purchase additional hardware at considerable cost while knowing that such hardware upgrades were unlikely to fix the problems with Defendant's system;

e.     refusing to refund Plaintiffs' money for a defective security system and continuing to debit Plaintiffs on a monthly basis for a security system which failed to provide Plaintiffs' family with the functionality, safety and security, for which the system was sold;

f.     other violations of the CFA which may be revealed during the course of discovery.

65.     These misrepresentations and omissions of Defendant Vivint were intended to result and did result in the sale of products by Defendants to the consuming public and violated and continue to violate the CFA.

66.     As a result of Defendant's conduct, Plaintiffs and the Class are entitled to restitution and damages equal to the amounts that expended on the purchase of Defendant's hardware; the amount expended for Defendant's monthly monitoring fees; the amount expended to upgrade existing wireless network hardware; and the amount expended to pay the monthly monitoring fees for the remainder of the prior home security system contracts, as well as punitive and/or treble damages pursuant to the CFA.

67.     Plaintiffs have standing to bring an action pursuant to the CFA on behalf of themselves and the Class because Plaintiffs and the members of the Class have sustained ascertainable losses as a result of Defendants' wrongful conduct.

68.     Plaintiffs will incur attorneys' fees and costs in connection with the filing of this Complaint and in connection with the prosecution of this action.  An award of attorneys' fees, filing fees, and reasonable costs of suit is therefore appropriate pursuant to N.J.S.A. 56:8-19, and other applicable law.

**SECOND CAUSE OF ACTION**
**(Breach of Express and Implied Warranties)**

69.     Plaintiffs incorporate by reference each and every allegation above, inclusive of all paragraphs, as if set forth herein in their entirety.

70.     Plaintiffs, and each member of the Class, formed a contract with Defendant Vivint.  The terms of the written contracts were not disclosed in full or in part to Plaintiffs and the Class members.  However, the warranties include the promises and affirmations of fact made by Defendant through its salespersons, representatives, installers, and technicians.  These affirmations, written and verbal, constitute express and implied warranties and became part of the bargain between Plaintiffs (and the Class members) and Defendant Vivint.

71.     All conditions precedent under these contracts have been performed by the Plaintiffs and the Class members.

72.     Defendant has breached the terms of these warranties, including the express and implied warranties, by not providing a product which conformed to the representations made by

14

Defendant through its agents.

73.     As a result of Defendant's breaches of express and implied warranties, Plaintiffs and the Class are entitled to restitution and damages equal to the amounts that Plaintiffs and the Class members expended on the purchase of Defendant's hardware; the amount expended for Defendant's monthly monitoring fees; the amount expended to upgrade existing wireless network hardware; and the amount expended to pay the monthly monitoring fees for the remainder of the prior home security system contracts.

### THIRD CAUSE OF ACTION
### (Negligent Misrepresentation)

74.     Plaintiffs incorporate by reference each and every allegation above, inclusive of all paragraphs, as if set forth herein in their entirety.

75.     Defendant Vivint, through its salespersons, representatives, installers, and technicians, made representations to Plaintiffs and the Class members about the quality and performance of Defendant's home security system.

76.     When Defendant's representatives made the representations about its home security system, it had no reasonable ground for believing that the system would perform as promised.

77.     Defendant made the above-referenced representation with the intention of inducing Plaintiffs and the Class members to act in reliance on these representations and purchase Defendant's home security system.

78.     Defendant had superior knowledge and information regarding the actual

15

performance of Defendant's home security systems and Plaintiffs and the Class members did not have access to this information.

79.     Defendants' unlawful conduct was directed to consumers in New Jersey.

80.     Plaintiffs and the Class members reasonably relied on the Defendant's representations that its home security system would continuously record video from the security cameras and provide safety and security for purchasers' families.

81.     Plaintiffs and the Class members reasonably relied on Defendant to provide them with a complete written contract which disclosed all material terms, including the rights and responsibilities of the parties and any dispute-resolution provisions, including arbitration provisions.

82.     Plaintiffs and other Class members would not have purchased Defendant's home security system absent Defendant's misrepresentations and omission of material information at or about the time of sale.

83.     The foregoing misrepresentations and omission of material information proximately caused Plaintiffs and the Class members to suffer damages in that they purchased Defendant's home security system without knowing that the system was unlikely to provide reliable camera monitoring and recording.

84.     The foregoing misrepresentations and omission of material information proximately caused Plaintiffs and the Class members to suffer damages in that they purchased Defendant's home security system without knowing material terms of the written contract, including the rights and responsibilities of the parties and dispute-resolution provisions, including arbitration provisions.

16

85.     As a direct and proximate result of Defendant's wrongful acts, Plaintiffs and the Class members have suffered and continue to suffer damages including the amounts that Plaintiffs and the Class members expended on the purchase of Defendant's hardware; the amount expended for Defendant's monthly monitoring fees; the amount expended to upgrade existing wireless network hardware; and the amount expended to pay the monthly monitoring fees for the remainder of the prior home security system contracts.

### FOURTH CAUSE OF ACTION
(Breach of the Duty of Good Faith
and Fair Dealing)

86.     Plaintiffs incorporate by reference each and every allegation above, inclusive of all paragraphs, as if set forth herein in their entirety.

87.     Every contract in New Jersey contains an implied covenant of good faith and fair dealing.

88.     Defendant Vivint breached the covenant of good faith and fair dealing by failing to honor Plaintiffs and the Class members requests that they receive a refund of the monies paid to Defendant and be released from the remainder of the monthly fees due under the contract.

89.     Defendant has acted in bad faith and/or with a malicious motive to deny Plaintiffs and Class members the benefit of their bargain, thereby causing Plaintiffs and the Class members damages including the amounts that Plaintiffs and the Class members expended on the purchase of Defendant's hardware; the amount expended for Defendant's monthly monitoring fees; the

amount expended to upgrade existing wireless network hardware; and the amount expended to pay the monthly monitoring fees for the remainder of the prior home security system contracts.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

a.   determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

b.   appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

c.   award all actual, compensatory, consequential, special, statutory, treble, and punitive damages to which Plaintiffs and Class members are entitled;

d.   award pre-judgment and post-judgment interest on such monetary relief;

e.   grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the home security systems;

f.   award reasonable attorney's fees and costs; and

g.   grant such further relief that this Court may deem appropriate.

**GERSTEIN GRAYSON COHEN & MELLETZ, LLP**


By:   /s/ *Brandon G. Johnson*
           Brandon G. Johnson, Esquire, for the Firm
           New Jersey Bar ID No.: 007701993
           1288 Route 73 South, Suite 301
           Mount Laurel, New Jersey   08054
           (856) 795-6700
           bjohnson@gersteingrayson.com

           Attorneys for Plaintiffs


Dated: February 24, 2020