**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

JEFFREY PETROZZINO and
CHRISTINE PETROZZINO, h/w,
individually and on behalf of
all others similarly
situated,

            Plaintiff,

   v.

VIVINT, INC.,

            Defendant.

No. 1:20-cv-01949-NLH-KMW

**OPINION**

---

**APPEARANCES**:

BRANDON G. JOHNSON
GERSTEIN GRAYSON & COHEN LLP
1288 ROUTE 73 SOUTH
SUITE 301
MT. LAUREL, NJ 08054

    *Attorney for Plaintiffs Jeffrey Petrozzino and Christine*
    *Petrozzino.*

JENNY NICOLE PERKINS
BALLARD SPAHR LLP
1735 MARKET STREET
51ST FLOOR
PHILADELPHIA, PA 19103

WILLIAM PATRICK REILEY
BALLARD SPAHR
201 LAKE DRIVE EAST
SUITE 200
CHERRY HILL, NJ 08002

    *Attorneys for Defendant Vivint, Inc.*

**HILLMAN**, District Judge

This matter arises from a contract between Plaintiffs Christine and Jeffrey Petrozzino and Defendant Vivint, Inc. for a home security system installed by Defendant.  Presently pending before the Court is Defendant's Motion to Compel Arbitration on an Individual Basis and Stay Proceedings.  (ECF No. 15).  For the reasons outlined below, the Court will grant Defendant's motion.

**Background**

Plaintiffs allege that on August 25, 2017, they were visited at their residence by a door-to-door sales representative from Defendant, who solicited Plaintiffs to purchase one of Defendant's home security systems.  Plaintiffs agreed to purchase the system, based, they allege, "upon Defendant's representations that Defendant's home security system was of good quality, functional, and appropriate for Plaintiffs' use, and that Vivint would pay off the remaining balance due on Plaintiffs' existing home security system."  (ECF No. 7 at ¶ 27).  On August 25, Defendant provided Plaintiffs with a one-page document titled "Purchase and Services Agreement" related to their purchase of the security system; that document was signed by both Plaintiffs, although it does not appear that it was ever signed by a representative of Defendant.  (Id. at ¶ 31; ECF No. 17-1, Ex. A).

Then, on August 27, Defendant's technician installed the system, and Defendant sent Plaintiff an email which referenced an attached "Order Confirmation" document.  (ECF No. 7 at ¶ 49). That document contained a "Schedule of Equipment and Services," an "E-Sign Consent" form, and another Purchase and Services Agreement.  (ECF No. 17-1, Ex. D).  The August 27 version of the Purchase and Services Agreement provided an updated price for the equipment purchased by Plaintiff, and also included a second page with a number of additional terms and conditions.  Those terms and conditions included an "Entire Agreement" clause stating that the August 27th contract "replaces any earlier oral or written understanding or agreements," and a clause requiring that any claims "directly or indirectly arising out of, relating to, or in connection with the Agreement regardless of what legal theory" must be submitted to arbitration on an individual basis. (ECF No. 17-1, Ex. D at §§ 19-20).  While Plaintiffs signed the August 27 agreement as well, they allege that they were unaware that the agreement was not identical to the version emailed to them on August 25, and "had no reason to suspect that the 'Order Confirmation' as characterized by Defendant, was actually a contract with terms which varied from the original contract sent the prior day."  (ECF No. 7 at ¶¶ 50-51).

Plaintiffs allege that over the following months they suffered a series of issues with their home security system; the

specifics of those issues are not relevant for the present
motion.  During their attempt to resolve those issues,
Plaintiffs requested and received a copy of the August 27th
agreement from Defendant on April 3, 2019; it was not until
November 4, 2019, that Plaintiff Jeffrey Petrozzino discovered
that the August 27th email had "included a different version of
the Agreement."  Id. at ¶¶ 47-49.

Finally, on February 24, 2020, Plaintiffs filed their
original complaint.  (ECF No. 1).  After this Court issued
multiple orders to show cause related to jurisdictional issues,
Plaintiffs filed the operative amended complaint on March 24,
2020.  (ECF No. 7).  The putative class action complaint alleges
four causes of action: (1) violations of the New Jersey Consumer
Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, et seq., both for the
underlying issues with the security system and Defendant's
actions related to them, and for Defendant's actions in getting
Plaintiffs to sign the August 27 agreement which included the
arbitration agreement; (2) breach of express and implied
warranties; (3) negligent misrepresentation; and (4) breach of
the duty of good faith and fair dealing.  On June 22, Defendant
filed the present motion to compel arbitration on an individual
basis and stay proceedings.  (ECF No. 15).  Plaintiff then filed
a brief in opposition to the motion to compel, (ECF No. 17),

which Defendant responded to with a reply brief in further
support of the motion.  (ECF No. 20).

**Discussion**

I.   **Subject Matter Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28
U.S.C. § 1332(d), the Class Action Fairness Act (CAFA), which
provides, in relevant part, that "district courts shall have
original jurisdiction of any civil action in which the matter in
controversy exceeds the sum or value of $5,000,000, exclusive of
interest and costs, and is a class action in which ... (A) any
member of a class of plaintiffs is a citizen of a State
different from any defendant."

II.  **Legal Standards for Motions to Compel**

The parties here directly dispute which standard is
appropriate for the Court to apply to the present motion.  In
response to prior uncertainty and inconsistency regarding the
appropriate standard to apply to a motion to compel arbitration,
the Third Circuit outlined the proper approach for district
courts faced with such motions in Guidotti v. Legal Helpers Debt
Resolution, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013).  There,
the Court explained that where the issue of whether the parties
entered into an enforceable agreement to arbitrate a dispute can
be decided without additional evidence, the appropriate standard
to apply is that for motions to dismiss under Federal Rule of

Civil Procedure 12(b)(6).  When that is not possible, however, the court should permit limited discovery on the question of arbitrability.  "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard" pursuant to Rule 56.  Id. at 776.  If there is a genuine issue of fact, summary judgment must be denied and the issue of arbitrability must be tried.  Id. at 774-76.

"Accordingly, where the complaint and supporting documents are unclear as to an agreement to arbitrate, or where a plaintiff responds to a motion to compel with additional facts sufficient to place arbitrability 'in issue,' the parties should be entitled to discovery."  Discovery House v. Advanced Data Systems RCM, Inc., No. 19-21602 (KM) (JBC), 2020 WL 6938353, at *4 (D.N.J. Nov. 25, 2020).  If the complaint and any additional facts or evidence put forth by the Plaintiff in response to the motion do not place arbitrability at issue, discovery is unnecessary for resolving the motion to compel and the Court may rule on the motion in the first instance.

## III.  Legal Standard for Motions under Federal Rule of Civil Procedure 12(b)(6)

The parties here disagree over whether the present motion can be decided under the standard for Rule 12(b)(6) motions, and whether discovery on the question of arbitrability is necessary.

6

As explained above, if the existence of an arbitration agreement is clear from the surface of the complaint and the supporting documents, the motion to compel must be analyzed under the standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  When considering a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  A district court, in weighing a motion under Rule 12(b)(6), asks "not whether a

plaintiff will ultimately prevail but whether the claimant is
entitled to offer evidence to support the claim." Twombly, 550
U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236
(1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in
Twombly expounded the pleading standard for 'all civil actions'
. . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.
2009) ("Iqbal . . . provides the final nail in the coffin for
the 'no set of facts' standard that applied to federal
complaints before Twombly."). A 12(b)(6) motion "should be
granted if the plaintiff is unable to plead 'enough facts to
state a claim to relief that is plausible on its face.'"
Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

## IV.  **Analysis**

"It is well established that the Federal Arbitration Act
(FAA) reflects a 'strong federal policy in favor of the
resolution of disputes through arbitration.'" Kirleis v.
Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir.
2009) (quoting Alexander v. Anthony Int'l, L.P., 341 F.3d 256,
263 (3d Cir. 2003)). But before a court may implement this
preference, it must first determine "that (1) a valid agreement
to arbitrate exists, and (2) the particular dispute falls within
the scope of that agreement." Id. (citing Trippe Mfg. Co. v.
Niles Audio Corp, 401 F.3d 529, 532 (3d Cir. 2005)). In this
case, Plaintiffs do not dispute that the second requirement is

satisfied.  Nor would they likely have a basis for such an argument, since the contract explicitly states that any claims "directly or indirectly arising out of, relating to, or in connection with the Agreement regardless of what legal theory," are covered by the arbitration agreement. (ECF No. 17-1, Ex. D at § 19).

Accordingly, the central issue for the purposes of this motion is whether the agreement to arbitrate was valid.  And to determine which standard must be applied in deciding that question, the Court must first determine whether the complaint and the supporting documents it relies upon clearly establish whether there was a valid arbitration agreement, or if Plaintiffs' complaint or the evidence they have put forward in opposition to this motion to compel are sufficient to demand further discovery on the question of arbitrability.

Federal courts "look to applicable state law to determine whether the parties agreed to arbitrate." Ailments Krispy Kernels, Inc. v. Nichols Farms, 851 F.3d 283, 289 (3d Cir. 2017).  In New Jersey, "[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." Id. (quoting Morgan v. Sanford Brown Inst., 137 A.3d 1168, 1180 (N.J. 2016)).  "That standard, however, does not relieve a party from the terms of a contract simply because they did not read or specifically

discuss the terms." Sutton v. Lyles, No. 1:19-cv-7395-NLH-JS,
2020 WL 728815, at *4 (D.N.J. Feb. 13, 2020) (citing Ailments
Krispy Kernels, 851 F.3d at 289). Instead, "[w]hen a party
enters into a signed, written contract, that party is presumed
to understand and assent to its terms, unless fraudulent conduct
is suspected." Stelluti v. Casapenn Enters., LLC, 1 A.3d 678,
690 (N.J. 2010). The mere "[f]ail[ure] to read a contract does
not excuse performance unless fraud or misconduct by the other
party prevented one from reading." Gras v. Assocs. First
Capital Corp., 786 A.2d 886, 894 (N.J. Super. Ct. App. Div.
2001); see also Henningsen v. Bloomfield Motors, Inc., 161 A.2d
69, 84 (N.J. 1960) (calling same a "general principle" of
contract law).

     To determine whether further discovery is necessary, or
Defendant's motion to compel arbitration can be properly
assessed under the standard for 12(b)(6) motions, the Court must
analyze whether it is clear from the face of the complaint and
any incorporated documents that the parties agreed to the
arbitration clause. The Court first notes that there is no
disagreement as to whether the August 27, 2017 version of the
Purchase and Services Agreement included a clause providing that
claims such as those here must be arbitrated on an individual
basis — with the potential exception of Plaintiff's NJCFA claim

related to the signing of the August 27th agreement itself, which will be discussed in greater detail below.

Plaintiffs do not dispute this fact in their brief opposing the motion, and the existence of the arbitration agreement is clear on the face of the contract, which Plaintiffs both rely upon in their complaint as a basis for one of their fraud claims, (ECF No. 7 at ¶ 49-51), and have attached as an exhibit to their brief opposing this motion. (ECF No. 17-1, Ex. D). Nor is there any dispute as to whether Plaintiffs signed the August 27th Purchase and Services Agreement – Plaintiffs themselves have submitted the agreement, clearly showing their signatures, as an exhibit to their opposition brief, and have explicitly conceded that the agreement was signed by both them and a representative of Vivint. (ECF No. 17-1 at ¶ 13).

Instead, Plaintiffs argue that the arbitration agreement is unenforceable because it was reached through fraud on the part of Defendant. Plaintiffs put forth one central argument for why there was no valid agreement to arbitrate here, or alternatively for why further discovery on the question of arbitrability is needed: that they only signed the August 27th Purchase and Services Agreement that contained the arbitration agreement due to Defendant's fraudulent behavior, which prevented them from recognizing that the agreement contained an arbitration clause.

"It is the general rule that where a party affixes [her]
signature to a written instrument, ... a conclusive presumption
arises that [she] read, understood and assented to its terms and
[she] will not be heard to complain that [she] did not
comprehend the effect of [her] act in signing."  MZM
Construction Company, Inc. v. New Jersey Building Laborers
Statewide Benefit Funds, 974 F.3d 386, 403 (3d Cir. 2020)
(quoting Peter W. Kero, Inc. v. Terminal Const. Corp., 78 A.2d
814, 817 (N.J. 1951)).  However, "[t]here is an exception to
this general rule when a party's 'signature is obtained by fraud
or imposition in the execution of the instrument.'"  Id.
(quoting Kero, 78 A.2d at 817).

There are generally two forms of fraud that may be alleged
regarding an arbitration agreement — fraud in the inducement,
and fraud in the execution.  The specific form of fraud alleged
has a direct impact on the outcome of a motion to compel
arbitration:

"Fraud in the inducement occurs when one party's fraud
induces another party to enter into an agreement he or
she would not otherwise have entered. Importantly, both
parties recognize the existence and general nature of that
agreement. The general rule is that such fraud defenses
are a matter for the arbitrator, not the Court.
Meanwhile, fraud in the execution occurs when one party
executes an agreement with another party that is different
in nature from what the other party was led to believe it
had entered. Importantly, one party recognizes an
agreement that is fundamentally dissimilar from the one
it entered. The general rule here is that defenses of

12

fraud in the execution are a matter for the Court, not an arbitrator."

Droney v. Vivint Solar, No. 18-849 (RBK/KMW), 2018 WL 6191887, at *4 (D.N.J. Nov. 28, 2018) (citing Connors v. Fawn Mining Corp., 30 F.3d 483, 490 (3d Cir. 1994) and Angrisani v. Financial Technology Ventures, LP, 952 A.2d 1140, 1148 (N.J. Super Ct. App. Div. 2008)).

Plaintiffs here do not specifically label their claim as one for fraud in the inducement or fraud in the execution, and neither party has addressed the question of what form of fraud claim Plaintiff intended to state. Plaintiffs specifically allege that "Defendant Vivint violated the CFA by . . . providing consumers with a sales contract which was incomplete and omitted material terms related to the rights and obligations of the parties, including an arbitration provision, or providing no contract at all," and "misleading consumers by sending them a second version of a sales contract under the guise of an 'order confirmation' while failing to disclose that a contract which materially differed from the original contract was actually being sent . . . ." (ECF No. 7 at ¶ 68(a)-(b)). Having reviewed this claim within the context of the broader complaint, the Court interprets it as alleging fraud in the execution, since the complaint clearly claims that Defendant's alleged fraud caused Plaintiffs to "execute[] an agreement . . . that

[was] different in nature from what [they were] led to believe [they] had entered." Droney, 2018 WL 6191887, at *4.

As claims for fraud in the execution of an arbitration agreement are for the Court to assess, not for an arbitrator, the next question is then whether Plaintiffs have put forth an allegation of fraud in the execution sufficient to survive a Rule 12(b)(6) motion, and are therefore entitled to limited discovery. See Discovery House, 2020 WL 6938353, at *7, 9 (granting motion to compel arbitration because "even if a fraud-in-the-execution claim was intended, it is inadequately alleged"). "Fraud in the execution (or fraud in the factum) occurs when a party is compelled to sign the instrument 'by reason of a misrepresentation intended to deceive [her] as to its purport or content.'" MZM Constr., 974 F.3d at 403-04 (quoting Kero, 78 A.2d at 817-18). "Fraud in the execution may also be present 'when a party executes an agreement with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms' by reason of 'excusable ignorance.'" Id. at 404 (quoting Connors v. Fawn Mining Corp., 30 F.3d 483, 490, 491 (3d Cir. 1994)). Excusable ignorance "typically involves some sort of misconduct or imposition that cuts off the signer's opportunity to read, such as 'significant time pressure' and reliance on an erroneous 'assurance' that the parties' oral understanding had been or would be accurately

memorialized in an instrument." Id. (quoting Connors, 30 F.3d at 488, 492–93).  "In short, 'failing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading.'"  Id. (quoting New Gold Equities Corp. v. Jaffe Spindler Co., 181 A.3d 1050, 1064 (N.J. Super. Ct. App. Div. 2018)).

     The Court finds that, under the standard applied to Rule 12(b)(6) motions, Plaintiffs have failed to put forth sufficient factual allegations supporting a claim of fraud in the execution to defeat the present motion and justify further discovery on the question of arbitrability.  First, Plaintiffs have simply failed to allege any misrepresentations that rise to the level of intentional fraud by Defendant.  In fact, Plaintiffs have alleged only one affirmative representation regarding the contract that could even potentially have been viewed as deceptive: the use of the term "Order Confirmation" in the August 27, 2017 email that attached the version of the Purchase and Services Agreement in question here.  Specifically, Plaintiffs allege that the email "made no mention of the fact that [the] 'Order Confirmation' email had attached a different version of the Agreement from the version sent the day before," and that they had "no reason to suspect that the 'Order Confirmation' as characterized by Defendant, was actually a

contract with terms which varied from the original contract."
(ECF No. 7 at ¶¶ 50-51).

However, these allegations, even if true, simply do not
rise to the level of fraud, or even necessarily constitute
misrepresentations.  Plaintiffs do not allege that the August
27th email represented that the contract attached contained the
exact same terms as the contract from the previous day, that any
representative of Defendant had made any representations
regarding the agreement in any other capacity, or that the two
parties had ever discussed the terms of the Purchase and
Services Agreement at any stage.  Plaintiffs do not sufficiently
explain in their brief opposing the present motion to compel
exactly how the term "Order Confirmation" was inaccurate or
deceptive.  And Plaintiffs do not allege that Defendant ever
represented that the original August 25th document was a
complete, final version of the contract, and instead acknowledge
that the document was not signed by Defendant's representative;
in fact, the only thing the complaint alleges regarding the
August 25th document is that "Defendant emailed Plaintiff
Christine Petrozzino a copy of a two-page System 'Purchase and
Services Agreement', however, as is set forth in more detail
below, it was much later discovered that the agreement which was
sent to Mrs. Petrozzino was not complete."  (ECF No. 7 at ¶ 31).

16

Simply put, Plaintiffs have not alleged any representations by Defendant that could plausibly constitute fraud.

Nor have Plaintiffs alleged or demonstrated that they did not have a reasonable opportunity to obtain knowledge of the agreement's terms due to excusable ignorance.  Plaintiffs received an email attaching the contract, which they admittedly signed; they do not claim to have been pressured into signing the contract quickly, nor do they claim that they received outside assurances from any representative of Defendant that the contract was the same as the previous contract they had viewed and signed.  In fact, the August 27th agreement makes clear on its face that at least some changes had been made from the August 25th document: it not only includes another page of terms, the price it represents Plaintiffs agreed to pay for the equipment being installed by Defendant, which was $1,640.47 in the August 25th agreement, was raised to $1,961.08.  (Compare ECF No. 17-1, Ex. A, with id. at Ex. D).  Plaintiffs, had they given even a cursory look to the price they were required to pay in return for the equipment installed or to the length of the contract, would have known immediately that the attached document was not identical to the one sent the previous day.

In their opposition brief, Plaintiffs further describe Defendant's actions as "surreptitiously sending a second mislabeled email which included unsigned pages and terms which

materially differed from the agreement which Plaintiffs signed,"
which they argue "is, in and of itself, an act of consumer
fraud." (ECF No. 17 at 9).  Although Plaintiffs themselves cite
no case law in support of this statement, the Court notes that
the Third Circuit has previously recognized fraud in the
execution claims based on allegations that a party had
"surreptitiously substitute[d] a materially different contract
document" than the one the parties had agreed to.  Connors, 30
F.3d at 493.  However, cases such as those generally involve
situations where the parties negotiated a set of terms for their
agreement, reviewed a document that reflected those terms, and
then one of the parties substituted that previously reviewed
agreement and had the other party sign and execute an agreement
different from what they had negotiated.  In Connors v. Fawn
Mining Corp., 30 F.3d 483 (3d Cir. 1994), for example, an
employer and a union had negotiated a Collective Bargaining
Agreement, and signed an unattached signature page based on the
understanding that there was no contractual obligation for the
employer to contribute to a benefits plan, which they had
previously negotiated.  Id. at 492.  When the final contract
later turned out to include such a requirement, the Third
Circuit recognized the employer's fraud defense as asserting an
argument for fraud in the execution — emphasizing that both
parties had admitted that the contribution requirement was an

18

important issue that they had specifically negotiated.  Id. at
493.

　　　Similarly, in March Associates Const., Inc. v. New Jersey
Bldg. Laborers Statewide Pension Fund, 2014 WL 2611857 (D.N.J.
June 11, 2014), a construction association and a union had
negotiated for specific language in a particular clause; when
the parties later turned to negotiations on a separate clause,
the union, without warning, secretly removed the agreed-upon
language from the first clause.  Id. at *1-2.  When the
association later reviewed proposed edits to the second clause,
which was currently being negotiated, they did not think to
double-check the rest of the language in the contract, on which
they believed negotiations were complete.  Id. at 2.  The court
there "conclude[d] that Plaintiff ha[d] plead a plausible fraud
in the execution claim."  Id. at 5 (citing Connors, 30 F.3d at
493).  Unlike the parties in those earlier cases, however,
Plaintiffs here do not allege that any of the terms of the
Purchase and Services Agreement were negotiated by the parties,
and in fact do not allege that the parties actually discussed
the terms of the agreement, such as the arbitration clause, at
any point.

　　　Nor do the facts here, as alleged by Plaintiffs and shown
by the supporting documents and the evidence they have
introduced in opposition to this motion, portray a situation in

which additional terms were deceptively hidden or shielded from a customer's view in an attempt to commit fraud by omission.  In fact, they instead suggest that even a brief review of the document before it was signed would have revealed that a material number of additional terms were present.  Plaintiffs received a Purchase and Services Agreement on August 25th that was one-page long and showed only 4 sections; that document, however, explicitly referenced additional sections and a separate page that were not present, pointing the customer to "SECTIONS 17 AND 18 ON THE NEXT PAGE OF THIS AGREEMENT," and counseled the customer "DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF ANY OF THE SPACES INTENDED FOR THE AGREED TERMS TO THE EXTENT OF THEN AVAILABLE INFORMATION ARE LEFT BLANK."  (ECF No. 17-1, Ex. A).  Plaintiffs concede that the August 25th document "is not signed by Vivint's representative."  (ECF No. 17-1 at ¶ 6).

Two days later, they received an updated version of this agreement, which contained a higher price to be paid for the security system equipment, and included a second page with 18 additional sections, one of which was an arbitration agreement and another of which was a clause stating that the August 27th agreement "replaces any earlier oral or written understanding or agreements."  (ECF No. 17-1, Ex. D at §§ 19-20).  At its core, Plaintiffs' argument is that their failure to read the second

20

page of this two-page agreement should be excused because the email it was attached to (1) referred to the document containing the contract as an "Order Confirmation," despite the contract itself being explicitly labeled at the top of the page they signed as a "System Purchase And Services Agreement" that was dated for that day, and (2) did not explicitly state that the contract contained additional terms — a fact that should have been made clear by the fact that the contract was longer than one page.  Plaintiffs were neither stopped from taking a closer look at the agreement before they signed it, nor given any assurances or representations that would have made them think such a review was unnecessary.  As the Third Circuit has made clear, "failing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading."  MZM Constr., 974 F.3d at 404.

Finally, Plaintiffs make a few other arguments that the Court will address briefly.  First, Plaintiffs repeatedly emphasize that they did not sign the page of the agreement that included the arbitration clause.  However, as Defendant points out, Plaintiffs have put forth no case law supporting the argument that this impacts the validity of the arbitration agreement, and under New Jersey law terms and conditions that follow a signature line are incorporated into the agreement when the fact that there are additional terms is referenced before

21

the signature line.  See Marini v. Quality Remodeling Co., Inc.,
No. PAS-L-2714-03, 2006 WL 3783129, at *3 (N.J. Super. Ct. App.
Div. Feb. 10, 2006) (holding that plaintiffs were bound by
arbitration agreement that was on the unsigned second page of
the contract, because the contract had referenced "additional
terms and provisions" before the signature line on the first
page).  Here, as described above, the August 27th Purchase and
Services Agreement explicitly referenced additional terms on the
"next page" prior to the signature line, and Plaintiffs signed
the contract.  The fact that they did not also sign the second
page that included the arbitration clause is irrelevant to the
question of whether they are bound by that clause.

Plaintiffs further emphasize that the August 27th email was
not sent until after the security system was installed, but was
clearly intended to be sent prior to installation due to its
reference to their ability to ask questions or make changes to
their system "prior to installation." (ECF No. 17 at 6).
However, they do not persuasively explain why this would impact
the validity of the agreement, nor how it pertains to their
fraud allegations, and the Court again views this fact as
irrelevant to the central questions presented here.

Accordingly, the Court finds that Plaintiffs have failed to
sufficiently allege fraud in the execution of the August 27th
Purchase and Services Agreement.  That agreement contains a

22

clause requiring Plaintiffs to arbitrate the rest of their claims on an individual basis, and Plaintiffs have conceded that they signed the agreement.  The Court therefore finds that the existence of an enforceable arbitration clause is clear from the surface of Plaintiffs' complaint and the supporting documents, and that Plaintiffs have failed to put forth evidence in opposition to this motion sufficient to put the enforceability of that clause into question.  Further discovery on the issue of arbitrability is unnecessary, and the Court will grant Defendant's motion to compel arbitration on an individual basis and stay this proceeding pending that arbitration.

## Conclusion

For the reasons expressed above, Defendant's Motion to Compel Arbitration (ECF No. 15) will be granted, and this proceeding will be stayed pending arbitration.

An appropriate Order will be entered.


Date:  December 31, 2020                    /s Noel L. Hillman
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.


23